HOPKINS *v.* GRAND RAPIDS TRUST CO.

1. CONVERSION—RIGHT TO RECOVER SPECIFIC THING CONVERTED.
   In order to maintain action for conversion, plaintiff must show right to recover specific thing converted.

2. SAME—CHATTEL MORTGAGES—CONSENT—ESTOPPEL.
   Where mortgage note holders gave their consent to use of mortgaged property for purpose of its manufacture into products for sale, and it was so used, they thereby rendered its return to them impossible, barring their right to recover for its conversion.

Appeal from Kent; Brown (William B.), J. Submitted January 18, 1933. (Docket No. 23, Calendar No. 36,641.) Decided March 2, 1933.

Case by George B. Hopkins, trustee, against Grand Rapids Trust Company and Peter D. Kline for conversion of receivership assets. Directed verdict and judgment for plaintiff. Both parties appeal. Reversed, and judgment ordered entered for defendants.

*Linsey, Shivel & Phelps,* for plaintiff.

*Norris, McPherson, Harrington & Waer, Warner, Norcross & Judd,* and *Joseph Shulsky,* for defendants.

SHARPE, J. On May 15, 1927, the Bennett Brass Company, a corporation, with its office and principal place of business at Greenville, executed a mortgage, covering both real and personal property, to C. Sophus Johnson, of Grand Rapids, as trustee, to

secure the payment of certain notes to the amount of $75,000. The property mortgaged was described as follows:

"Lots 17, 18, 19, 20, and 21 of Edwards Third Addition to the city of Greenville, including all buildings now on or hereafter to be built thereon, machinery, equipment, and the merchandise inventory of raw materials and manufactured products, including any additions or substitutions of equipment and merchandise inventory and any and all future acquired property."

It was recorded as a real estate mortgage on July 20, 1927, and later filed as a chattel mortgage on August 5th of that year. On November 29, 1927, the defendant Grand Rapids Trust Company was appointed receiver for the Bennett Brass Company by the circuit court for the county of Montcalm, in chancery, and duly filed its acceptance and bond as such. The defendant Peter D. Kline, a vice-president of the company, acting for it, took possession of all of its assets. The inventory filed by him disclosed that the personal property covered by the chattel mortgage was of the value of $31,994.09.

It appears that at the time the mortgage was executed the brass company was indebted to certain banks in the sum of $37,500. These notes were guaranteed by seven directors of the company. They were renewed between the date of the mortgage and its record on August 5th, and were afterwards paid in full by them in January, 1928.

On April 27, 1928, Mr. Johnson, as trustee, called a meeting of these directors, who were also the holders of the notes secured by the mortgage, to consider the question of foreclosing the mortgage. He advised foreclosure. There was discussion, in which Mr. Kline, who was also present, at the request of

some of the note holders, took part and stated that in his opinion there was an opportunity to continue the receivership successfully.  Mr. Johnson testified:

"And I said to him then, 'Mr. Kline, do you realize the inventory which you have filed'—I had some information about the inventory,—was around thirty-three or thirty-four thousand dollars worth of merchandise—'and that belongs to us, or to me as trustee for these note holders?' And he said 'Yes.' And if we foreclose on that and that we wanted to go ahead with that.  He then stated to those present if we did not foreclose that they would see to it that we would—that we would be reimbursed, that is, that they would turn over to me as trustee, or to the bondholders when they were through operating the plant, merchandise or cash to its equivalent, to the personal property then on hand.

"*Q.*  Of what value?

"*A.*  It was property then on hand, which was around thirty-three or thirty-four thousand dollars.

"*Q.*  What next took place?

"*A.*  After Mr. Kline made that statement it was discussed, and I think I was still of the opinion we should still foreclose on that, because I was still being criticized by the different note holders because of nonpayment of the interest when I hadn't received any, and I told them I couldn't.  I know Mr. Kline made the statement as—from the different people present we took a vote on it and I asked each one of the men present then, if we should foreclose or should go ahead under the proposition that Mr. Kline had made.  We took a vote and I think it was unanimously agreed they could go ahead with it and use the materials under the proposition he had made."

His testimony as to what was then said by Mr. Kline is, in effect, corroborated by several of the note holders who were present.

Mr. Kline testified that he then stated that the "notes and the mortgage were not within the scope or jurisdiction of the receiver;" that he had promises of additional business, and that—

"I explained to them that with the results obtained up to that time, and with these additional possibilities, they might not desire to proceed with foreclosure, but specifically were they told by me, not once, but three or four different times, that we had no interest whatever in the matter of whether they proceeded with foreclosure or did not"—

and that the note holders present "decided the receiver had better continue on for a period, at least."

Mr. Kline also testified that the defendant trust company continued the business and advanced its own money at times to carry it on, but it was unsuccessful, and that, when its assets were finally disposed of, the personalty covered by the trust mortgage had been used up, and, on a sale had, the equity in the real estate and some of the equipment not covered by the mortgage were bid in by a representative of the trustee for the sum of one dollar, and that there was nothing left for creditors after paying the expenses of the administration by the receiver.

One June 23, 1930, Mr. Johnson resigned as trustee and the plaintiff, George B. Hopkins, was duly appointed his successor. This action was brought by him to recover the value of the personalty included in the mortgage, under the claim that it had been converted by the defendants to their own use.

At the conclusion of the evidence submitted by plaintiff, and also at the conclusion of all of the proofs, the defendants moved for a directed verdict. These motions were denied and a verdict directed

for plaintiff for the appraised value of the property mortgaged, less the amount of certain credits extended after the execution of the mortgage and before it was filed as a chattel mortgage, the balance, including interest, amounting to $27,629.85. Both parties have appealed from the judgment entered thereon, the plaintiff claiming that the court erred in reducing the damages to which he was entitled.

While the agreement claimed to have been made at the meeting held on April 27th is set forth in both counts of the declaration, plaintiff's right of recovery is based upon the conversion of the personal property included in the mortgage. On the argument for ·directed verdicts, the court said to plaintiff's counsel, ''I understand the plaintiff is standing now squarely on that one count of conversion,'' to which counsel replied: ''That was our motion, directed to that, if the court please.'' In the briefs filed, liability is predicated on conversion alone, so decision by us must rest thereon.

While there is dispute as to what was said·at the meeting held on April 27th, it clearly appears that the note holders, against the advice of the trustee, consented that the receiver might use the personal property covered by the mortgage in an effort to relieve the company from its financial embarrassment. They were all stockholders, and, as such, interested financially in the accomplishment of this result. This property consisted largely of raw material and unfinished goods, and was used by the receiver in the manufacture of the products in the sale of which the company had been engaged. It could not thereafter be returned to the trustee in the condition in which it was when consent to its use was given. All that the note holders could have expected was the return

of an equivalent in property or payment therefor in money. The continuance of the business by the receiver resulted in losses, of which the note holders were informed, and it does not appear that they in any way remonstrated on account of the manner in which it was conducting the business.

In view of these facts, it seems clear that this action for conversion cannot be sustained.

"It is a well-settled rule that if the owner expressly or impliedly assents to, or ratifies, the taking, use, or disposition of his property, he cannot recover for a conversion thereof." 38 Cyc. p. 2009.

"Trover is the name of the action which lay, at common law, for the recovery of damages for the conversion of personal property, and the gist of the action is the disposing or assuming to dispose of another's goods without his authority." 26 R. C. L. p. 1098.

"Trover is not maintainable as for a conversion of money unless there is an obligation on defendant's part to return the specific money intrusted to his care." *Shrimpton & Sons* v. *Culver* (syllabus), 109 Mich. 577.

In *Globe & Rutgers Fire Ins. Co.* v. *Fisher*, 234 Mich. 258, it was sought to hold an insurance agent liable in such an action for the conversion of moneys collected by him as premiums and not accounted for. The court said:

"The action of trover (now trespass on the case for conversion) could be maintained where the plaintiff was lawfully entitled to the possession of the specific thing converted. The rights of the parties might or might not be evidenced by a contract; but if evidenced by a contract, the contract must establish

the right of the plaintiff to the possession of the specific thing converted in order to maintain the action.''

When the note holders gave their consent to the use of the mortgaged property by the receiver for the purpose of its manufacture into products for sale, they thereby rendered it impossible for a return of it to be made to them. When so used, its identity was at once destroyed and return of it could not be had if demand had been made therefor. Their assent to the disposition made of it by the receiver bars the right to recover for its conversion.

Counsel for plaintiff call attention to many cases, collected and referred to in *Baxter* v. *Woodward,* 191 Mich. 379 (Ann. Cas. 1918C, 946), wherein it is held that when a bailee, having authority to use a chattel in a particular way, uses it in a different way, or to a greater extent than authorized, such unauthorized use is a conversion thereof. These are not applicable to the facts here presented, as it appears that this personal property was used by the receiver in the manner in which it was intended to be used when consent to its use was given.

It follows that the judgment entered must be reversed and set aside, and the cause remanded to the trial court, with direction to enter a judgment for the defendants, with costs of both courts.

McDONALD, C. J., and CLARK, POTTER, NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred.